FILED
U.S. DIST. COURT
MIDDLE DIST. OF LA

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

CASE NO.

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| BURTON DOUGLAS MORRISS, | ) |
| ACARTHA GROUP, LLC, | ) |
| MIC VII, LLC, | ) |
| ACARTHA TECHNOLOGY PARTNERS, LP, and | ) |
| GRYPHON INVESTMENTS III, LLC | ) |
| | ) |
| Defendants, and | ) |
| | ) |
| MORRISS HOLDINGS, LLC, | ) |
| | ) |
| Relief Defendant. | ) |

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiff Securities and Exchange Commission alleges:

## I.  INTRODUCTION

1.    From approximately 2005 through 2011, Defendant Burton Douglas Morriss, through several private equity funds and fund management companies he controlled, fraudulently transferred approximately $9.1 million of investor funds to himself and his family's holding company for personal use.  Among other things, Morriss satisfied loans, paid alimony, and took expensive vacations.  The companies disguised the transfers as loans and/or receivables without the knowledge or consent of investors.  The offering documents and subscription agreements of the entities through which Morriss solicited investments failed to advise investors that Morriss could or would transfer their money for his personal use.

A TRUE COPY OF THE ORIGINAL
JAMES G. WOODWARD, CLERK
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

BY: *Joyce M. Webb*
DEPUTY CLERK

2.      In addition, Morriss and the management company he controlled concocted a scheme to recruit new investors to purchase membership interests in one of the private equity funds, MIC VII, LLC, without the unanimous consent of the existing investors as required by MIC VII's Limited Liability Company Agreement. This diluted the investments of existing MIC VII investors. Effectively, Morriss used the $2.5 million in investor funds to satisfy a portion of a personal loan.

3.      Through their conduct, Morriss and Defendants Acartha Group, LLC; MIC VII, Acartha Technology Partners, LP ("ATP"); and Gryphon Investments III, LLC (collectively, the "Investment Entities") have violated Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §77q(a); and Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5. Morriss also aided and abetted the Investment Entities violations' of Section 10(b) and Rule 10b-5(b) of the Exchange Act. Morriss, Acartha Group and Gryphon Investments additionally violated Sections 206(1), 206(2), and 206(4) of the Investment Advisers Act of 1940 ("Advisers Act") and Rule 206(4)-8(a)(2) of the Advisers Act, 15 U.S.C. § 80b-6(1), 80b-6(2), and 80b-6(4) and 17 C.F.R. § 275.206(4)-8(a)(2). Morriss also aided and abetted Acartha Group's and Gryphon Investments' violations of Sections 206(1), 206(2), 206(4) and Rule 206(4)-8(a)(2) of the Advisers Act, 17 C.F.R. § 275.206(4)-8(a)(2). Unless the Court enjoins them, they are reasonably likely to continue to violate these provisions.

## II.     DEFENDANTS AND RELIEF DEFENDANT

### A.     Defendants

4.     **Morriss**, age 49, resides in St. Louis, Missouri.  Morriss is CEO and the chairman of Acartha Group's board of directors, the managing member of MIC VII.  Morriss is also a manager of Gryphon Investments, the general partner of ATP.  Morriss is also the chairman and controlling member of Relief Defendant Morriss Holdings, LLC, and a member of its board of directors.

5.     **Acartha Group** is a Delaware limited liability company incorporated in February 2003, with its principal place of business in Clayton, Missouri.  It also maintains an office in East Brunswick, New Jersey.  Acartha Group was established as a private equity fund management company.  Acartha Group is the managing member of MIC VII and also manages Gryphon Investments.

6.     **MIC VII** is a Delaware limited liability company incorporated in March 2005, with its principal place of business in Clayton, Missouri.  MIC VII is a private equity fund formed to invest in early to mid-stage companies primarily in the financial services and technology sectors.

7.     **ATP** is a Delaware limited partnership organized in April 2008, with its principal place of business in Clayton, Missouri.  ATP is a private equity fund formed for the same purpose as MIC VII.

8.     **Gryphon Investments** is a Delaware limited liability company incorporated in February 2003, with its principal place of business in Clayton, Missouri.  Gryphon Investments is the general partner of ATP.

**B.    Relief Defendant**

9.    **Morriss Holdings, LLC** is a Missouri limited liability company incorporated in March 1998, with its principal place of business in Clayton, Missouri. Morriss Holdings is a family business Morriss controls.

### III.    JURISDICTION AND VENUE

10.    The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d), and 77v(a); Sections 21(d), and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d) and 78aa; and Section 214 of the Advisers Act, 15 U.S.C. § 80b-14.

11.    This Court has personal jurisdiction over the Defendants and the Relief Defendant, and venue is proper in the Eastern District of Missouri because many of the Defendants' acts and transactions constituting violations of the Securities Act, Exchange Act, and Advisers Act occurred in the Eastern District of Missouri. Also, the Investment Entities and Morriss Holdings maintain offices in the Eastern District of Missouri, and Morriss resides in the Eastern District of Missouri. Moreover, Morriss and the Investment Entities offered and sold securities and solicited and received funds in this district.

12.    In connection with the conduct alleged in this Complaint, the Defendants, directly and indirectly, singly or in concert with others, have made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation and communication in interstate commerce, and the mails.

## IV.    THE DEFENDANTS' FRAUDULENT CONDUCT

### A.    Background

13.    Incorporated in 2003, Acartha Group managed MIC VII and ATP – private equity funds that invested in early to mid-stage companies in the financial services and technology sectors.    Morriss operated as Acartha Group's CEO and served as the chairman of Acartha Group's board of directors.    Acartha Group also controlled several special purpose vehicles that invested in the same private companies in which MIC VII and ATP invested.    Morriss and Gryphon Investments represented to investors that it was the fund manager for ATP, however, it outsourced ATP's management operations to Acartha Group. Morriss solicited investments through emails, telephone calls, and meetings with potential investors.

14.    As private equity fund manager, Acartha Group's business included, among other things, selecting the private companies in which to invest and managing the day-to-day operations of the funds.    Acartha Group had two sources of revenue: (1) it collected a 2% management fee from investors' committed capital; and (2) a percentage of carried interest. Morriss and the Investment Entities defined carried interest as the net profit from the sale of a private equity fund's portfolio company after investors received distributions equal to their invested capital in that portfolio company.    For example, after the sale of an ATP portfolio company, ATP first used the proceeds to reimburse investors for their pro-rata share of the principal invested by ATP in the portfolio company.    ATP characterized any remaining profit after that distribution as carried interest, a percentage of which ATP would distribute to Acartha Group and its investors.

15.    From 2003 until 2011, Morriss and the Investment Entities raised at least $88 million from approximately 97 investors to invest in preferred shares or membership interests of

5.

the equity funds MIC VII and ATP, the related special purpose vehicles, and the management companies – Acartha Group and Gryphon Investments.

16.    Investors who invested in the management companies did so to receive a percentage of the carried interested owed to those companies.  In addition, Gryphon Investments investors had the option to convert their Gryphon Investments shares into common partnership shares and/or invest in ATP.

17.    Morriss and Acartha Group established MIC VII in 2005.  Acartha Group served as its managing member.  The original purpose of MIC VII was to invest in several portfolio companies while Morriss and Acartha Group were in the process of creating a larger fund – ATP.  Formed in 2008, ATP invested in many of the same portfolio companies.

18.    As of 2011, investors of ATP, MIC VII, and the related special purpose vehicles had invested approximately $53 million in portfolio companies.

**B.    Morriss' Misappropriation of Funds from the Investment Entities**

19.    Unbeknownst to investors, Morriss misappropriated more than $9 million from the Investment Entities for his personal use.  Morriss directed the Investment Entities to transfer funds to himself and to Morriss Holdings.

20.    Morriss lived a lavish lifestyle, living in a multi-million dollar home, driving luxury automobiles, leasing a private airplane and helicopter, and taking expensive vacations.

21.    As early as 2005, Morriss was taking funds from Acartha Group, while at the same time lending money to it.  In early 2006, Acartha Group's new CFO – concerned about the transfers – implemented a "netting agreement," which tracked the difference between the amounts Morriss and Morriss Holdings advanced to and took from Acartha Group.  The netting agreement did not provide for the accrual of interest.  By December 2006, Morriss and Morriss

Holdings owed Acartha Group approximately $2.2 million. In that same month, another entity Morriss controlled satisfied that debt. Subsequently, Morriss was, at times, both a borrower from and a lender to Acartha Group, MIC VII, ATP, and Gryphon Investments.

22.     In 2008, Acartha Group's CFO changed the manner in which the Investment Entities recorded transfers to Morriss and Morriss Holdings from non-interest-bearing transfers to individual promissory notes. The notes provided for the payment of interest for the transfers from the Investment Entities to Morriss and Morriss Holdings. The notes, however, were not collateralized and had no due date.

23.     Around this time, Morriss began experiencing increasingly severe financial difficulties. As a result, he began selling personal assets, including a lodge and hunting property in Canada, and he relinquished his leasing interests in the use of his personal aircraft. He also became delinquent on several million dollars in personal loans. Due to his deteriorating financial condition, Morriss continued to move money from the Investment Entities to himself and Morriss Holdings.

24.     By the summer of 2009, Morriss had borrowed more money than he had advanced to Acartha Group and the other Investment Entities. At that time, Acartha Group's Chief Administrative Officer and its outside accountant alerted Morriss to the situation. Morriss, however, continued to transfer money to himself and Morriss Holdings. By the end of 2009, Morriss and Morriss Holdings owed Acartha Group, MIC VII, ATP, and Gryphon Investments approximately $2 million.

25.     At the same time, Acartha Group's financial condition was deteriorating. As a result, officers of Acartha Group and ATP expressed concern to Morriss about the extent of the transfers from the Investment Entities to Morriss and Morriss Holdings. For example, on

December 29, 2008, Acartha Group's Chief Financial Officer sent an email to Morriss concerned that Morriss had transferred $50,000 from ATP to himself, without advising the CFO of the transaction. Acartha Group's CFO left the company soon after, in part due to Morriss' transfers. Moreover, a March 14, 2009, email from Acartha Group's Chief Administrative Officer to Morriss and another officer advised that Acartha Group's Chief Technology Officer was upset and shocked by the amount of fund proceeds Morriss transferred to himself.

26.    Morriss also transferred new investor money from Gryphon Investments and ATP to himself and Morriss Holdings. For example, between March 2008 and June 2009, Morriss transferred approximately $1.7 million out of a total of $3.75 million in new Gryphon Investments investor funds to himself and Morriss Holdings. In addition, Morriss used $305,000 of Gryphon Investments investor funds to pay interest due on his personal line of credit. Similarly, from September 2009 through August 2010, Morriss took at least $1.4 million out of approximately $6 million in new ATP investor funds.

27.    In anticipation of an external audit of Acartha Group, in 2010 its management decided to consolidate Morriss' and Morriss Holdings' promissory notes with the Investment Entities. Acartha Group reclassified all of the transfers from the Investment Entities to Morriss and Morriss Holdings into a consolidated note receivable due from Morriss Holdings to Acartha Group.

28.    Even after the consolidation, Morriss continued to transfer money to himself and Morriss Holdings through at least August 2011. From December 31, 2009 through at least September 30, 2011, net transfers of funds from Acartha Group to Morriss and/or Morriss Holdings more than tripled, ballooning to at least $6.6 million plus interest.

29.    Morriss used the funds he transferred from the Investment Entities to himself and Morriss Holdings for personal expenditures, including alimony payments, interest payments for personal loans, and expensive vacations, including a hunting trip to Africa.

### C.    The Defendants' Misrepresentations and Omissions to Investors

30.    Morriss, Acartha Group, MIC VII, ATP, and Gryphon Investments defrauded investors by failing to disclose that Morriss would or could use investor proceeds for personal use.  The offering and operating agreements varied among the Investment Entities, yet none advised investors Morriss would use their funds personally, let alone have the Investment Entities make personal, unsecured loans to Morriss and Morriss Holdings.

31.    To the contrary, the offering and operating documents of ATP specifically prohibited Morriss from taking loans, while the documents of the other Investment Entities describe the permissible uses of fund money in vague, broad, or inconsistent terms.  Morriss deliberately requested that the Investment Entities utilize vague and broad language in these documents.  As a result, he and the Investment Entities misled investors as to how the Defendants would use their funds.

32.    For example, Section 7.7 of ATP's 2008 Agreement of Limited Partnership, entitled "No Transfer, Withdrawal or Loans" advised investors the fund could not make loans.  Specifically, the agreement stated "the General Partner may not, voluntarily or involuntarily . . . sell assign, transfer, pledge, mortgage, hypothecate, encumber or therein dispose of or grant a security interest in, all or any of its interest except as otherwise specifically set forth herein.  The General Partner *may not borrow or withdraw any funds or securities from the Partnership* except as expressly permitted by this Agreement" (emphasis added).  The agreement contains no

9

provision advising investors that ATP could use investor funds to make personal transfers or loans to Morriss and Morriss Holdings.

33.    Similarly, Gryphon Investments' 2008 Limited Liability Company Operating Agreement includes language indicating the company would not use investor funds for personal transfers or loans to Morriss.  Section 4.1.1.9 of the Agreement advised investors that Gryphon Investments' management could "make loans or advances to other Persons," but specifically excluded "members, Managers and Affiliates of Members and of Managers."

34.    In contrast, the 2005 MIC VII Amended and Restated Limited Liability Company Operating Agreement stated in vague terms that the "Managing Member is authorized and empowered on behalf of and in the name of the Company to carry out any and all of the purposes of the Company and to perform all acts and enter into and perform all contracts and undertakings that it may, in its sole discretion, deem necessary, advisable or incidental thereto."  It did not advise investors MIC VII would transfer investor money to Morriss and Morriss Holdings.

35.    Acartha Group's 2007 Private Placement Memorandum ("PPM") similarly failed to alert investors the company would transfer their funds to Morriss and Morriss Holdings for Morriss' personal use.  Like the MIC VII Operating Agreement, Acartha Group's PPM utilized vague terms.  It provided that "net proceeds of this offering after payment of expenses are anticipated to be used to repay existing obligations of the Company and for working capital purposes.  Management will have broad discretion with respect to the application of these funds." Nowhere did the PPM advise investors that Acartha Group would be using their funds as a routine source for personal transfers to Morriss and Morriss Holdings.

36.    Due to its deteriorating financial position, in December 2011 Acartha Group issued a letter to investors disclosing for the first time, the transactions with Morriss and Morriss

Holdings and requesting additional funds so Acartha Group and the funds it managed could continue operations. Acartha Group also advised investors that Morriss had taken a leave of absence from Acartha Group.

**D.      Defrauding MIC VII Investors**

37.      In addition to the more than $6 million in fraudulent transfers Morriss and Morriss Holdings received from Acartha Group, ATP, MIC VII, and Gryphon Investments, in 2008, Morriss received an additional $2.5 million from MIC VII. In July 2008, MIC VII obtained a $2.5 million loan from Wachovia Bank, which Morriss personally guaranteed. MIC VII used the proceeds of the Wachovia loan to acquire stock in one of its portfolio companies on behalf of investors. Unable to repay the loan, MIC VII later sold the stock it acquired in the portfolio company to ATP for $2.5 million.

38.      Rather than pay back the loan and extinguish the debt MIC VII and its investors owed, Morriss misappropriated the money for his personal use. Morriss used the $2.5 million to pay down a portion of a personal, family loan unrelated to the operations of MIC VII. The debt MIC VII owed to Wachovia remained outstanding. Neither Morriss, MIC VII, nor Acartha Group disclosed to investors Morriss' receipt of the $2.5 million at the time of the transfer.

39.      In 2010, in order to satisfy the outstanding Wachovia loan, Morriss recruited additional investors to join MIC VII. The MIC VII Operating Agreement, however, required the managing member of MIC VII (Acartha Group) to obtain unanimous consent of existing investors to admit new investors into MIC VII. Morriss deliberately circumvented this Operating Agreement by concocting a fraudulent scheme to admit additional investors into MIC VII without the unanimous consent of existing investors.

40.    The scheme, on paper, worked like this: the new investors were to invest in MIC VII indirectly by investing their money into a new company – Acartha Group Funding, LLC, which Acartha Group and Morriss managed. In turn, Acartha Group Funding was to invest in Acartha Group, which would then invest these funds into MIC VII on the new investors' behalf. In return for the additional funds, Acartha Group agreed to distribute more than 10% of any future MIC VII distributions to the new investors. In reality, however, the new investors simply wired their funds directly to Wachovia bank to satisfy MIC VII's loan.

41.    The transaction resulted in the dilution of earlier MIC VII investors' interests, unbeknownst to them.

**E.    Defrauding Gryphon Investments Investors**

42.    Morriss, Acartha Group, and Gryphon Investments defrauded Gryphon Investments investors by failing to disclose that Morriss and Acartha Group used their investment almost exclusively to fund Acartha Group's operations, provide loans to Morriss and Morriss Holdings, and service Morriss' personal debt. In addition, Morriss and Gryphon Investments represented to investors that Gryphon Investments would be the manager of ATP, when in reality Acartha Group acted as its manager.

43.    In 2008, Gryphon Investments raised funds through the sale of Series A Cumulative Preferred Shares. In May of 2008, Morriss represented to investors the investment opportunity in Gryphon Investments Series A Cumulative Preferred Shares included a 10% annual dividend, a portion of the company's carried interest from ATP's portfolio, and the right to convert the Gryphon Investments shares to limited partner interests in ATP. Morriss also told investors Gryphon Investments was the general partner and manager of ATP and that Gryphon

12

Investments would only use investor money to fund working capital and other Gryphon Investments expenditures.

44.     In reality, of the $3.75 million Gryphon Investments raised from investors between March 2008 and June 2009, Gryphon Investments transferred approximately $1.7 million to Morriss and Morriss Holdings for his personal use, $305,000 to pay interest on Morriss' personal line of credit, and approximately $1.6 million to Acartha Group. These transfers routinely occurred almost immediately after investors wired their funds.   Morriss, Acartha Group, and Gryphon Investments did not disclose these transactions to investors or tell them Gryphon Investments would transfer their money as advances or personal loans to Morriss.

45.     In addition, unbeknownst to investors, in November 2008, Gryphon Investments outsourced its management of ATP to Acartha Group.   Morriss also did not permit Gryphon Investments Series A Cumulative Preferred shareholders to convert their shares into limited partnership interests in ATP.

## V.     CLAIMS FOR RELIEF

### COUNT I

### FRAUD IN THE OFFER OR SALE OF SECURITIES
### IN VIOLATION OF SECTION 17(a)(1) OF THE SECURITIES ACT
#### (Against All Defendants)

46.     The Commission repeats and realleges paragraphs 1 through 45 of its Complaint.

47.     From as early as 2005 through 2011, the Defendants, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by use of the mails, in the offer or sale of securities, as described in this Complaint, knowingly, willfully or recklessly employed devices, schemes or artifices to defraud.

48.     By reason of the foregoing, the Defendants directly and indirectly, violated and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(1) of the Securities Act 15 U.S.C. § 77q(a).

## COUNT II

### FRAUD IN THE OFFER OR SALE OF SECURITIES
### IN VIOLATION OF SECTIONS 17(a)(2) and 17(a)(3) OF THE SECURITIES ACT
**(Against All Defendants)**

49.     The Commission repeats and realleges paragraphs 1 through 45 of its Complaint.

50.     From as early as 2005 through 2011, the Defendants, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by the use of the mails, in the offer or sale of securities: (a) obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; or (b) engaged in transactions, practices and courses of business which are now operating and will operate as a fraud or deceit upon purchasers and prospective purchasers of such securities.

51.     By reason of the foregoing, the Defendants directly and indirectly, violated and, unless enjoined, are reasonably likely to continue to violate, Sections 17(a)(2) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(2) and 77q(a)(3).

## COUNT III

### FRAUD IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES
### IN VIOALTION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5
**(Against All Defendants)**

52.     The Commission repeats and realleges paragraphs 1 through 45 of its Complaint.

53.    · From as early as 2005 through 2011, the Defendants, directly and indirectly, by use of the means and instrumentality of interstate commerce, and of the mails in connection with the purchase or sale of securities, knowingly, willfully or recklessly: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and courses of business which have operated, are now operating and will operate as a fraud upon the purchasers of such securities.

54.    By reason of the foregoing, the Defendants, directly or indirectly, violated and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

## COUNT IV

### AIDING AND ABETTING VIOLATIONS
### OF SECTION 10(b) AND RULE 10b-5(b) OF THE EXCHANGE ACT
### (Against Morriss)

55.    The Commission repeats and realleges paragraphs 1 through 45 of its Complaint.

56.    From as early as 2005 through 2011, Acartha Group, MIC VII, ATP, and Gryphon Investments, directly and indirectly, by use of the means and instrumentality of interstate commerce, and of the mails in connection with the purchase or sale of securities, knowingly, willfully or recklessly made untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

57.    Morriss, from as early as 2005 through 2011, knowingly or recklessly substantially assisted Acartha Group's, MIC VII's, ATP's, and Gryphon Investments' violations

of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

58.    By reason of the foregoing, Morriss, directly or indirectly, violated and, unless enjoined, is reasonably likely to continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b).

## COUNT V

### FRAUD BY INVESTMENT ADVISORS IN VIOLATION OF
### SECTION 206(1) AND 206(2) OF THE ADVISERS ACT
### (Against Morriss, Acartha Group & Gryphon Investments)

59.    The Commission realleges and incorporates Paragraphs 1 through 45 of this Complaint.

60.    During the relevant time period, Morriss, Acartha Group, and Gryphon Investments were investment advisers within the meaning of Section 202(a)(11) of the Advisers Act, 15 U.S.C. § 80b-2(11).

61.    From as early as 2005 through 2011, Morriss, Acartha Group, and Gryphon Investments, by use of the mails, and the means and instrumentalities of interstate commerce, directly or indirectly, while acting as an investment advisers, knowingly, willfully, or recklessly: (a) employed devices, schemes, or artifices to defraud clients or prospective clients; (b) engaged in transactions, practices, and courses of business that operated as a fraud or deceit upon clients or prospective clients; and (c) engaged in acts, practices, and courses of business which were fraudulent, deceptive, or manipulative.

62.    By reason of the foregoing, Morriss, Acartha Group, and Gryphon Investments, directly and indirectly, violated and, unless enjoined, are reasonably likely to continue to violate, Sections 206(1) and 206(2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) and 80b-6(2).

## COUNT VI

### AIDING AND ABETTING VIOLATIONS OF
### SECTIONS 206(1) AND 206(2) OF THE ADVISERS ACT
### (Against Morriss)

63.    The Commission realleges and incorporates Paragraphs 1 through 45 of this Complaint.

64.    During the relevant time period, Acartha Group and Gryphon Investments were investment advisers within the meaning of Section 202(a)(11) of the Advisers Act, 15 U.S.C. § 80b-2(11).

65.    From as early as 2005 through 2011, Acartha Group and Gryphon Investments, by use of the mails, and the means and instrumentalities of interstate commerce, directly or indirectly, while acting as an investment advisers, knowingly, willfully, or recklessly: (a) employed devices, schemes, or artifices to defraud clients or prospective clients; (b) engaged in transactions, practices, and courses of business that operated as a fraud or deceit upon clients or prospective clients; and (c) engaged in acts, practices, and courses of business which were fraudulent, deceptive, or manipulative.

66.    Morriss, from as early as 2005 through 2011, knowingly or recklessly substantially assisted Acartha Group's and Gryphon Investments' violations of Sections 206(1) and 206(2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) and 80b-6(2).

67.    By reason of the foregoing, unless enjoined, Morriss is reasonably likely to continue to violate, Sections 206(1) and 206(2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) and 80b-6(2).

## COUNT VII

### FRAUD IN VIOLATION OF SECTION 206(4)
### AND RULE 206(4)-8(a)(2) OF THE INVESTMENT ADVISERS ACT
(Against Morriss, Acartha Group, and Gryphon Investments)

68.     The Commission realleges and incorporates Paragraphs 1 through 45 of this Complaint.

69.     From as early as 2005 through 2011, Morriss, Acartha Group, and Gryphon Investments, while acting as investment advisors, by use of the mails, and the means and instrumentalities of interstate commerce, directly or indirectly engaged in acts, practices or courses of business which are fraudulent, deceptive, or manipulative with respect to any investor or prospective investor in a pooled investment vehicle.

70.     By reason of the foregoing, Morriss, Acartha Group, and Gryphon Investments, directly or indirectly, violated and, unless enjoined, are reasonably likely to continue to violate, Section 206(4) and Rule 206(4)-8(a)(2) of the Advisers Act, 15 U.S.C. 80b-6(4) and 17 C.F.R. § 275.206(4)-8(a)(2):

## COUNT VIII

### AIDING AND ABETTING VIOLATIONS
### OF FRAUD IN VIOLATION OF SECTION 206(4)
### AND RULE 206(4)-8(a)(2) OF THE ADVISERS ACT
(Against Morriss)

71.     The Commission realleges and incorporates Paragraphs 1 through 45 of this Complaint.

72.     From as early as 2005 through 2011, Acartha Group, and Gryphon Investments, while acting as investment advisors, by use of the mails, and the means and instrumentalities of interstate commerce, directly or indirectly engaged in acts, practices or courses of business

which are fraudulent, deceptive, or manipulative with respect to any investor or prospective investor in a pooled investment vehicle.

73.     Morriss, by engaging in the conduct described above, knowingly or recklessly substantially assisted Acartha Group's and Gryphon Investments' violations of Section 206(4) and Rule 206(4)-8(a)(2) of the Advisers Act, 15 U.S.C. 80b-6(4) and 17 C.F.R. § 275.206(4)-8(a)(2).

74.     By reason of the foregoing, Morriss directly or indirectly, violated and, unless enjoined, is reasonably likely to continue to violate, Section 206(4) and Rule 206(4)-8 of the Advisers Act, 15 U.S.C. 80b-6(4) and 17 C.F.R. § 275.206(4)-8(a)(2).

## RELIEF REQUESTED

**WHEREFORE,** the Commission respectfully requests that the Court:

### I.

### Declaratory Relief

Declare, determine, and find that the Defendants have committed the violations of the federal securities laws alleged herein.

### II.

### Injunctive Relief

Issue Permanent Injunctions, restraining and enjoining Morriss, Acartha Group, MIC VII, ATP, and Gryphon Investments, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from violating Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder; and restraining and enjoining Morriss, Acartha Group, and Gryphon Investments, their agents, sales agents, servants, employees, attorneys, and all persons in active concert or participation

with them, and each of them, from directly or indirectly violating Sections 206(1), 206(2), 206(4), and 206(4)-8(a)(2) of Advisers Act.

### III.

### __Disgorgement__

Issue an Order directing the Defendants to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts or courses of conduct alleged in this Complaint.

### IV.

### __Penalties__

Issue an Order directing the Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d), and as to Morriss, Acartha Group, and Gryphon Investments, pursuant to Section 209(e) of the Advisers Act, 15 U.S.C. §80b-9(e).

### V.

### __Officer and Director Bar__

Issue an Order pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], barring Morriss from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act or that is required to file reports pursuant to Section 15(d) of the Exchange Act.

### VI.

### __Further Relief__

Grant such other and further relief as may be necessary and appropriate.

## VII.

### Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

January 17, 2011

Respectfully submitted,

By:

Adam L. Schwartz
Senior Trial Counsel
New York Bar No. 4288783
Direct Dial:  (305) 982-6390
E-mail: schwartza@sec.gov

Robert K. Levenson
Regional Trial Counsel
Florida Bar No. 0089771
Direct Dial:  (305) 982-6341
E-mail: levensonr@sec.gov

Brian T. James
Senior Counsel
Florida Bar No. 431842
Direct Dial: (305) 982-6335
E-mail: jamesb@sec.gov

Attorneys for Plaintiff
**SECURITIES AND EXCHANGE
COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida  33131
Telephone: (305) 982-6300
Facsimile:  (305) 536-4154

Case: 4:12-cv-00080-CEJ   Doc. #: 1-1   Filed: 01/17/12   Page: 1 of 1 PageID #: 22

**✎JS 44** (Rev. 11/04)    **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| **I. (a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| Securities and Exchange Commission | Burton Douglas Morriss, Acartha Group, LLC, MIC VII, LLC, Acartha Technology Partners, LP, Gryphon ~~Investments III, LLC~~ |
| **(b)** County of Residence of First Listed Plaintiff _____<br>(EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant _____<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |
| **(c)** Attorney's (Firm Name, Address, and Telephone Number)<br>Adam L. Schwartz and Robert K. Levenson<br>Securities and Exchange Commission, 801 Brickell Ave.<br>~~Suite 1800, Miami, FL 33131, 305-982-6300~~ | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☒ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury – Med. Malpractice<br>☐ 365 Personal Injury – Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☒ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts |
|  |  |  | **PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark |  |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities – Employment<br>☐ 446 Amer. w/Disabilities – Other<br>☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt.Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes |
|  |  |  | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) |  |
|  |  |  | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 |  |

**V. ORIGIN** (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15USC§77q(a),15USC§78j(b),15USC§§80b-6(1),80b-6(2) and 80b-6(4), 17CFR§240.10b-5

Brief description of cause:
17CFR§275.206(4)-8   Inj., Disgorgement and Penalties

**VII. REQUESTED IN COMPLAINT:**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____    CHECK YES only if demanded in complaint:  JURY DEMAND: ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY**  (See instructions):    JUDGE _____    DOCKET NUMBER _____

DATE  1/17/12

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| SECURITIES AND<br>EXCHANGE COMMISSION      ,<br><br>                    Plaintiff,<br><br>          v.<br>BURTON DOUGLAS<br>MORRISS, ET AL.          ,<br><br>                    Defendants, | )<br>)<br>)<br>)<br>)<br>)  Case No.<br>)<br>)<br>)<br>)<br>) |

**ORIGINAL FILING FORM**

**THIS FORM MUST BE COMPLETED AND VERIFIED BY THE FILING PARTY
WHEN INITIATING A NEW CASE.**

☐     THIS SAME CAUSE, OR A SUBSTANTIALLY EQUIVALENT COMPLAINT, WAS

PREVIOUSLY FILED IN THIS COURT AS CASE NUMBER _____

AND ASSIGNED TO THE HONORABLE JUDGE _____.

☐     THIS CAUSE IS RELATED, BUT IS NOT SUBSTANTIALLY EQUIVALENT TO ANY

PREVIOUSLY FILED COMPLAINT.  THE RELATED CASE NUMBER IS _____ AND

THAT CASE WAS ASSIGNED TO THE HONORABLE _____.  THIS CASE MAY,

THEREFORE, BE OPENED AS AN ORIGINAL PROCEEDING.

☒     NEITHER THIS SAME CAUSE, NOR A SUBSTANTIALLY EQUIVALENT

COMPLAINT, HAS BEEN PREVIOUSLY FILED IN THIS COURT, AND THEREFORE

MAY BE OPENED AS AN ORIGINAL PROCEEDING.

**The undersigned affirms that the information provided above is true and correct.**

Date: \_\_1/17/12\_\_          _____
                                   Signature of Filing Party

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the
### Eastern District of Missouri

| | |
|---|---|
| Securities and Exchange Commission | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | )     Civil Action No. |
| Burton Douglas Morriss, Et al. | ) |
| _____ | ) |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Burton Douglas Morriss
10048 Litzsinger Road
St. Louis, Missouri 63124

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Adam L. Schwartz, Esq. and Robert K. Levenson, Esq.
Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
(305) 982-6300

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*

was received by me on *(date)*                    .

❐ I personally served the summons on the individual at *(place)*

on *(date)*                    ; or

❐ I left the summons at the individual's residence or usual place of abode with *(name)*

, a person of suitable age and discretion who resides there,

on *(date)*                    , and mailed a copy to the individual's last known address; or

❐ I served the summons on *(name of individual)*                    , who is

designated by law to accept service of process on behalf of *(name of organization)*

on *(date)*                    ; or

❐ I returned the summons unexecuted because                    ; or

❐ Other *(specify):*


My fees are $                for travel and $                for services, for a total of $        0.00        .

I declare under penalty of perjury that this information is true.


Date:

                                   _____
                                            *Server's signature*

                                   _____
                                          *Printed name and title*

                                   _____
                                             *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Eastern District of Missouri

| | |
|---|---|
| Securities and Exchange Commission | ) |
| _Plaintiff_ | ) ) |
| v. | ) |
| Burton Douglas Morriss, Et al. | ) ) |
| _Defendant_ | ) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_   Acartha Group, LLC
c/o Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, DE 19808

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Adam L. Schwartz, Esq. and Robert K. Levenson, Esq.
Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
(305) 982-6300

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date: _____

_____
_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

### PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00 .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                          *Server's signature*

                                          _____
                                          *Printed name and title*

                                          _____
                                          *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

| | | |
|---|---|---|
| Securities and Exchange Commission | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. |
| Burton Douglas Morriss, Et al. | ) | |
| *Defendant* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   MIC VII, LLC
c/o Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, DE 19808

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Adam L. Schwartz, Esq. and Robert K. Levenson, Esq.
Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
(305) 982-6300

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*

was received by me on *(date)*                              .

☐ I personally served the summons on the individual at *(place)*

                                        on *(date)*                    ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)*

                              , a person of suitable age and discretion who resides there,

on *(date)*                    , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)*                              , who is

designated by law to accept service of process on behalf of *(name of organization)*

                                        on *(date)*                    ; or

☐ I returned the summons unexecuted because                              ; or

☐ Other *(specify):*


My fees are $                for travel and $              for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.


Date:

                                        _____
                                                *Server's signature*

                                        _____
                                                *Printed name and title*

                                        _____
                                                *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

| | |
|---|---|
| Securities and Exchange Commission | ) |
| | ) |
| *Plaintiff* | ) |
| v. | )       Civil Action No. |
| Burton Douglas Morriss, Et al. | ) |
| | ) |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*    Acartha Technology Partners LP
c/o Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, DE 19808

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Adam L. Schwartz, Esq. and Robert K. Levenson, Esq.
Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
(305) 982-6300

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____                    _____
                                                        *Signature of Clerk or Deputy Clerk*

Case: 4:12-cv-00080-CEJ   Doc. #:  1-6   Filed: 01/17/12   Page: 2 of 2 PageID #: 31

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*

was received by me on *(date)*                                          .

☐ I personally served the summons on the individual at *(place)*

on *(date)*                          ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)*

, a person of suitable age and discretion who resides there,

on *(date)*                          , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)*                                          , who is

designated by law to accept service of process on behalf of *(name of organization)*

on *(date)*                          ; or

☐ I returned the summons unexecuted because                                          ; or

☐ Other *(specify):*

My fees are $                          for travel and $                          for services, for a total of $        0.00        .

I declare under penalty of perjury that this information is true.

Date:

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Missouri

| | |
|---|---|
| Securities and Exchange Commission | ) |
| | ) |
| *Plaintiff* | ) |
| | ) |
| v. | )   Civil Action No. |
| Burton Douglas Morriss, Et al. | ) |
| | ) |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Gryphon Investments III, LLC
c/o Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, DE 19808

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Adam L. Schwartz, Esq. and Robert K. Levenson, Esq.
Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
(305) 982-6300

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*

was received by me on *(date)*                                    .

☐ I personally served the summons on the individual at *(place)*

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify)*:

.

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

| | | |
|---|---|---|
| Securities and Exchange Commission | ) | |
| *Plaintiff* | )<br>)<br>) | |
| v. | ) | Civil Action No. |
| Burton Douglas Morriss, Et al. | )<br>)<br>) | |
| *Defendant* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Morriss Holdings, LLC
c/o Corporation Service Company
221 Bolivar Street
Jefferson City, Missouri 65101

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Adam L. Schwartz, Esq. and Robert K. Levenson, Esq.
Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
(305) 982-6300

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____                    _____
                                              *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏  I personally served the summons on the individual at *(place)*
_____ on *(date)* _____ ; or

❏  I left the summons at the individual's residence or usual place of abode with *(name)*
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏  I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)*
_____ on *(date)* _____ ; or

❏  I returned the summons unexecuted because _____ ; or

❏  Other *(specify):*
_____ .


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____                            _____
                                                                *Server's signature*

                                                 _____
                                                                *Printed name and title*

                                                 _____
                                                                *Server's address*

Additional information regarding attempted service, etc:

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SECURITY AND EXCHANGE
      COMMISSION
_____,                    )
                Plaintiff (s),              )
                                            )
                                            )
        v.                                  )        Case No.
                                            )
BURTON DOUGLAS MORRISS,                     )
      ET AL                                 )
_____,                    )
                Defendant(s).               )

NOTICE OF INTENT TO USE
PROCESS SERVER

                        Plaintiff
Comes now _____ and notifies the court of the intent to use
            (Plaintiff or Defendant)

        DM Professional Services
_____
        (name  and address of process server)

        501 Silverside Road, Suite 72
_____

        Wilmington DE 19809
_____

To serve:  Acartha Group, LLC, MIC VII, LLC, Acartha
           Technology Parnters, LP and Gryphon Investments
_____III. LLC_____⊞in the
        (name of defendants to be served by this process server)

above-styled cause.  The process server listed above possesses the

requirements as stated in Rule 4 of the Federal Rules of Civil Procedure.

The undersigned affirms the information provided above is true and correct.

        01/17/2012                            Adam L. Schwartz
_____          _____
        (date)                           (attorney for Plaintiff)


                                 _____
                                         (attorney for Defendant)

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

SECURITY AND EXCHANGE
COMMISSION

_____,                )

            **Plaintiff (s),**                )

                                     )

            v.                )        **Case No.**

                                     )

BURTON DOUGLAS MORRISS,
ET AL

_____,                )

         **Defendant(s).**                )

## NOTICE OF INTENT TO USE
## PROCESS SERVER

               Plaintiff

Comes now _____ and notifies the court of the intent to use

        **(Plaintiff or Defendant)**

   HPS Process & Investigation, Inc.
_____

      **(name and address of process server)**

   6614 Clayton road, Suite 248
_____

     St. Louis, MO 63117
_____

To serve:  B. Douglas Morriss and Morriss Holdings, LLC

_____in the

    **(name of defendants to be served by this process server)**

above-styled cause.  The process server listed above possesses the

requirements as stated in Rule 4 of the Federal Rules of Civil Procedure.

The undersigned affirms the information provided above is true and correct.

   01/17/2012                       Adam L. Schwartz
_____      _____

     **(date)**                      **(attorney for Plaintiff)**

                               _____

                             **(attorney for Defendant)**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

**CASE NO.**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BURTON DOUGLAS MORRISS, | ) |
| ACARTHA GROUP, LLC, | ) |
| MIC VII, LLC, | ) |
| ACARTHA TECHNOLOGY PARTNERS, LP, and | ) |
| GRYPHON INVESTMENTS III, LLC, | ) |
| | ) |
| Defendants, and | ) |
| | ) |
| MORRISS HOLDINGS, LLC, | ) |
| | ) |
| Relief Defendant. | ) |

A TRUE COPY OF THE ORIGINAL
JAMES G. WOODWARD, CLERK
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
BY _____
                    DEPUTY CLERK

## ORDER APPOINTING RECEIVER

**WHEREAS,** Plaintiff Securities and Exchange Commission has filed an emergency motion for the appointment of a Receiver over Defendants Acartha Group, LLC; MIC VII, LLC; Acartha Technology Partners, LP ("ATP"); and Gryphon Investments III, LLC (collectively, the "Investment Entities"), with full and exclusive power, duty and authority to: administer and manage the business affairs, funds, assets, choses in action and any other property of the Investment Entities; operate as the sole and exclusive managing member or partner of the Investment Entities; maintain sole authority to administer any and all bankruptcy cases in the manner determined to be in the best interests of the estates of Acartha Group, MIC VII, ATP, and Gryphon Investments; marshal and safeguard all of the assets of the Investment Entities and take whatever actions are necessary for the protection of investors;

**WHEREAS**, the Commission has made a sufficient and proper showing in support of the relief requested by evidence demonstrating a *prima facie* case of violations of the federal securities laws by Acartha Group, MIC VII, ATP, and Gryphon Investments;

**WHEREAS**, the Commission has submitted the credentials of a candidate to be appointed as Receiver of all of the assets, properties, books and records, and other items of Acartha Group, MIC VII, ATP, and Gryphon Investments, including any properties, assets and other items held in the name of Acartha Group, MIC VII, ATP, and Gryphon Investments, and the Commission has advised the Court that this candidate is prepared to assume this responsibility if so ordered by the Court;

**NOW, THEREFORE, IT IS ORDERED AND ADJUDGED** that *Claire M. Schenk* is hereby appointed the Receiver over Acartha Group, MIC VII, ATP, and Gryphon Investments and each of their subsidiaries, successors and assigns, and is hereby authorized, empowered, and directed to:

1.     Take immediate possession of all property, assets and estates of every kind of the Investment Entities whatsoever and wheresoever located, including but not limited to all offices maintained by the Investment Entities' rights of action, books, papers, data processing records, evidences of debt, bank accounts, savings accounts, certificates of deposit, stocks, bonds, debentures and other securities, mortgages, furniture, fixtures, office supplies and equipment, and all real property of the Investment Entities, wherever situated, and to administer such assets as is required in order to comply with the directions contained in this Order, and to hold all other assets pending further order of this Court;

2.     Investigate the manner in which the affairs of the Investment Entities were conducted and institute such actions and legal proceedings, for the benefit and on behalf of the

2

Investment Entities and their investors and other creditors as the Receiver deems necessary against those individuals, corporations, partnerships, associations and/or unincorporated organizations which the Receiver may claim have wrongfully, illegally or otherwise improperly misappropriated or transferred money or other proceeds directly or indirectly traceable from investors in Acartha Group, MIC VII, ATP, and Gryphon Investments, their officers, directors, employees, affiliates, subsidiaries, or any persons acting in concert or participation with them, or against any transfers of money or other proceeds directly or indirectly traceable from investors in Acartha Group, MIC VII, ATP, and Gryphon Investments; provided such actions may include, but not be limited to, seeking imposition of constructive trusts, disgorgement of profits, recovery and/or avoidance of fraudulent transfers under Missouri Statute § 428.005, et. seq. or otherwise, rescission and restitution, the collection of debts, and such orders from this Court as may be necessary to enforce this Order;

3.      Present to this Court a report reflecting the existence and value of the assets of the Investment Entities and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Investment Entities;

4.      Appoint one or more special agents, employ legal counsel, actuaries, accountants, clerks, consultants and assistants as the Receiver deems necessary and to fix and pay their reasonable compensation and reasonable expenses, as well as all reasonable expenses of taking possession of the assets and business of the Investment Entities and exercising the power granted by this Order, subject to approval by this Court;

5.      Engage persons in the Receiver's discretion to assist the Receiver in carrying out the Receiver's duties and responsibilities, including, but not limited to, the United States Marshal's Service or a private security firm;

3

6.    Defend, compromise or settle legal actions, including the instant proceeding, in which Acartha Group, MIC VII, ATP, or Gryphon Investments or the Receiver are a party, commenced either prior to or subsequent to this Order, with authorization of this Court; except, however, in actions where Acartha Group, MIC VII, ATP, or Gryphon Investments is a nominal party, as in certain foreclosure actions where the action does not effect a claim against or adversely affect the assets of Acartha Group, MIC VII, ATP, or Gryphon Investments, the Receiver may file appropriate pleadings at the Receiver's discretion.  The Receiver may waive any attorney-client or other privilege held by Acartha Group, MIC VII, ATP, and Gryphon Investments;

7.    Assume control of, and be named as authorized signatory for, all accounts at any bank, brokerage firm or financial institution which has possession, custody or control of any assets or funds, wherever situated, of Acartha Group, MIC VII, ATP, and Gryphon Investments and, upon, order of this Court, of any of their subsidiaries or affiliates, provided that the Receiver deems it necessary;

8.    Make or authorize such payments and disbursements from the funds and assets taken into control, or thereafter received by the Receiver, and incur, or authorize the incurrence of, such expenses and make, or authorize the making of, such agreements as may be reasonable, necessary, and advisable in discharging the Receiver's duties;

9.    Have access to and review all mail of Acartha Group, MIC VII, ATP, and Gryphon Investments (except for mail that appears on its face to be purely personal or attorney-client privileged) received at any office or address of Acartha Group, MIC VII, ATP, and Gryphon Investments.

**IT IS FURTHER ORDERED AND ADJUDGED** that, in connection with the appointment of the Receiver provided for above:

4

10.    Acartha Group, MIC VII, ATP, and Gryphon Investments, and all of their directors, officers, agents, employees, attorneys, attorneys-in-fact, shareholders, and other persons who are in custody, possession, or control of any assets, books, records, or other property of the Investment Entities shall deliver forthwith upon demand such property, money, books and records to the Receiver, and shall forthwith grant to the Receiver authorization to be a signatory as to all accounts at banks, brokerage firms or financial institutions which have possession, custody or control of any assets or funds in the name of or for the benefit of the Investment Entities;

11.    All banks, brokerage firms, financial institutions, and other business entities which have possession, custody or control of any assets, funds or accounts in the name of, or for the benefit of, Acartha Group, MIC VII, ATP, or Gryphon Investments or the Defendants shall cooperate expeditiously in the granting of control and authorization as a necessary signatory as to said assets and accounts to the Receiver;

12.    Unless authorized by the Receiver, Acartha Group, MIC VII, ATP, and Gryphon Investments, and their principals shall take no action, nor purport to take any action, in the name of or on behalf of the Investment Entities;

13.    Acartha Group, MIC VII, ATP, and Gryphon Investments, their principals, and their respective officers, agents, employees, attorneys, and attorneys-in-fact, shall cooperate with and assist the Receiver, including, if deemed necessary by the Receiver, appearing for deposition testimony upon two days notice (by facsimile), and producing documents upon two days notice, while the Commission's request for an asset freeze is pending. Acartha Group, MIC VII, ATP, and Gryphon Investments and their principals and respective officers, agents, employees, attorneys, and attorneys-in-fact shall take no action, directly or indirectly, to hinder, obstruct, or otherwise interfere with the Receiver in the conduct of the Receiver's duties or to interfere in any manner,

5

directly or indirectly, with the custody, possession, management, or control by the Receiver of the funds, assets, premises, and choses in action described above;

14.     The Receiver, and any counsel whom the Receiver may select, are entitled to reasonable compensation from the assets now held by or in the possession or control of or which may be received by Acartha Group, MIC VII, ATP, and Gryphon Investments; said amount or amounts of compensation shall be commensurate with their duties and obligations under the circumstances, subject to approval of the Court; subject to the conditions of Paragraph 26;

15.     During the period of this receivership, all persons, including creditors, banks, investors, or others, with actual notice of this Order, are enjoined from filing a petition for relief under the United States Bankruptcy Code without prior permission from this Court, or from in any way disturbing the assets or proceeds of the receivership or from prosecuting any actions or proceedings which involve the Receiver or which affect the property of Acartha Group, MIC VII, ATP, and Gryphon Investments;

16.     The Receiver is fully authorized to proceed with any filing the Receiver may deem appropriate under the Bankruptcy Code as to Acartha Group, MIC VII, ATP, and Gryphon Investments;

17.     Title to all property, real or personal, all contracts, rights of action and all books and records of the Investment Entities and their principals, wherever located within or without this state, is vested by operation of law in the Receiver;

18.     Upon request by the Receiver, any company providing telephone services to Acartha Group, MIC VII, ATP, and Gryphon Investments shall provide a reference of calls from any number presently assigned to the Investment Entities to any such number designated by the Receiver or perform any other changes necessary to the conduct of the receivership;

6

19.    Any entity furnishing water, electric, telephone, sewage, garbage or trash removal services to Acartha Group, MIC VII, ATP, and Gryphon Investments shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver;

20.    The United States Postal Service is directed to provide any information requested by the Receiver regarding Acartha Group, MIC VII, ATP, and Gryphon Investments and to handle future deliveries of the mail of Acartha Group, MIC VII, ATP, and Gryphon Investments as directed by the Receiver;

21.    No bank, savings and loan association, other financial institution, or any other person or entity shall exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;

22.    No bond shall be required in connection with the appointment of the Receiver. Except for an act of gross negligence or greater, the Receiver shall not be liable for any loss or damage incurred by Acartha Group, MIC VII, ATP, and Gryphon Investments, or by the Receiver's officers, agents or employees, or any other person, by reason of any act performed or omitted to be performed by the Receiver in connection with the discharge of the Receiver's duties and responsibilities;

23.    Service of this Order shall be sufficient if made upon Acartha Group, MIC VII, ATP, and Gryphon Investments and their principals by facsimile or overnight courier;

24.    In the event the Receiver discovers that funds of persons who have invested in Acartha Group, MIC VII, ATP, and Gryphon Investments or have been transferred to other persons or entities, the Receiver shall apply to this Court for an Order giving the Receiver

possession of such funds and, if the Receiver deems it advisable, extending this receivership over any person or entity holding such investor funds;

25.   This Court shall retain jurisdiction of this matter for all purposes.

26.   The Receiver shall file applications with this Court for fees and costs for himself and any counsel or other professionals he retains on a quarterly basis.  The applications shall include itemized and detailed bills for all fees sought, and receipts or other appropriate documentation for all expenses and costs sought.  Simultaneously with filing the fee applications, the Receiver shall file a quarterly report with the Court detailing actions taken and results achieved in the previous quarter.  At least 10 days before filing any fee application with the Court, the Receiver shall submit a draft of the application for review to the Securities and Exchange Commission.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Court has jurisdiction to determine the effect of any bankruptcy proceeding may have on this matter.

**IT IS FURTHER ORDERED AND ADJUDGED** that the automatic stay provisions of 11 U.S.C. § 362(a) do not apply to this matter and the equitable relief requested by the Commission.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Receiver is authorized, solely and exclusively, to operate and manage the businesses and financial affairs of Defendant Acartha Group, MIC VII, ATP, and Gryphon Investments and the Receiver Estates.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Receiver shall succeed to all rights and powers of managing member and/or managing partner of Acartha Group, MIC VII, ATP, and Gryphon Investments and shall have the sole and exclusive right and authority to take all actions necessary in such capacity, including, but not limited to, filing bankruptcy petitions on

8

behalf of Acartha Group, MIC VII, ATP, and Gryphon Investments and to act as debtor-in-possession, subject to further order of the Bankruptcy Court.

**DONE AND ORDERED** this *17th* day of January, 2012, in *St. Louis*, Missouri.

UNITED STATES DISTRICT JUDGE

Copies to:

Adam L. Schwartz, Esq.
Robert K. Levenson, Esq.

9